**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

O

**CIVIL MINUTES - GENERAL**

Case No. SACV 11-1157 DOC (RNBx)            Date: December 28, 2011
Title: C.W. -V- CAPISTRANO UNIFIED SCHOOL DISTRICT

PRESENT:

                     THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                      NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS TO DISMISS AND MOTION TO STRIKE

       Before the Court is Defendant Capistrano Unified School District's ("Defendant") Motion to Dismiss the First, Second, and Third Causes of Action and Motion to Strike Certain Prayers for Relief. (Dkt. 5). The Court finds this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. After considering the moving, opposing and replying papers, and for the reasons stated below, the Court hereby GRANTS IN PART and DENIES IN PART the Motion.

       I.      **BACKGROUND**

       Plaintiff, C.W., a minor, brought this action against Defendant, by and through her mother, K.S., appealing the Decision of the California Office of Administrative Hearings Special Education Division ("OAH"), and also alleging violations of the Intimidation Clause of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203(b), the Civil Rights Act of 1871, 42 U.S.C. § 1983, and section 504 of the Rehabilitation Act. Plaintiff is a child with a disability under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* (Compl. ¶ 11.) Specifically, Plaintiff has cerebral palsy and a ventriculoperitoneal shunt, resulting in the need for special education and related services. (*Id.*)

       In January 2011, Defendant conducted an occupational therapy assessment of Plaintiff. (*Id.* ¶ 12.) Following this assessment, Plaintiff concluded that the assessment was inappropriate and not

in compliance with the law. (*Id.*) Plaintiff then demanded an independent educational evaluation ("IEE") for occupational therapy, under 34 C.F.R. § 300.502(b). (*Id.*) In response, Defendant chose not to provide the IEE, but instead exercised its right to file a Request for Due Process Hearing with the OAH wherein Defendant sought to establish that its assessment of Plaintiff was appropriate. (*Id.* ¶ 13.)

On May 10, 2011, the OAH issued its decision, concluding that Defendant's assessment was appropriate. (*Id.* ¶ 15.) After reviewing the decision, Plaintiff decided to appeal. Before filing the instant suit, Plaintiff contacted Defendant, through counsel, as an attempt to exhaust any possibility of settlement. (*Id.* ¶ 16.) In response, Defendant sent a letter indicating that if Plaintiff chose to appeal, Defendant would seek sanctions against Plaintiff and counsel for filing the frivolous appeal. (*Id.* ¶ 16.) Defendant concluded that the appeal would be frivolous because Plaintiff did not introduce any evidence before the OAH regarding the need for occupational therapy. However, Plaintiff points out that Defendant had the burden of proof at the OAH hearing. (*Id.* ¶ 17.)

On August 3, 2011, Plaintiff filed the instant suit, appealing the OAH decision and alleging three new claims based on the letter from Defendant's counsel wherein counsel reserved the right to seek sanctions against Plaintiff for filing a frivolous appeal. Plaintiff's ADA claim is based on Defendant's alleged interference, in the form of threats and intimidation, with the right to make a charge, participate in legal proceedings, or otherwise seek legal redress. (*Id.* ¶ 20.) Plaintiff's § 1983 claim is based on retaliation in violation of the Petition clause of the First Amendment. (*Id.* ¶ 26.) Plaintiff's § 504 claim is based on Defendant's interference with the protected activity of advocating for the services and assessments to which Plaintiff is entitled. (*Id.* ¶ 32.)

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In order for a complaint to survive a 12(b)(6) motion, it must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). A claim for relief is facially plausible when the plaintiff pleads enough facts that, when taken as true, allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct. *Id.* at 1949. If the facts only allow a court to draw a reasonable inference that the defendant is possibly liable, then the complaint must be dismissed. *Id.* Mere legal conclusions need not be accepted as true and do not establish a plausible claim for relief. *Id.* at 1950. Determining whether a complaint states a plausible claim for relief is a context-specific task requiring the court to draw on its judicial experience and common sense. *Id.*

### III. DISCUSSION

#### A. Litigation Privilege

As an initial matter, Defendant argues that Plaintiff's first three causes of action should be dismissed because the conduct complained of, *i.e.*, counsel's letter reserving the right to seek sanctions based on filing a frivolous appeal of the OAH decision, constitutes privileged litigation communications. (Mot. at 3.) Defendant maintains that the federal common-law litigation privilege protects the statements made in counsel's letter.[1] (*Id.* at 5.) Defendant cites *Fry v. Melaragno*, 939 F.2d 832, 837 (9th Cir. 1991), for the proposition that government attorneys performing acts intimately related to litigation are entitled to absolute immunity from damages. Defendant also explains that it has the right under the IDEA to argue that Plaintiff's appeal of the OAH decision is frivolous. (*Id.* at 7, citing 20 U.S.C. § 1415(i)(B)(i)(II), (III).)

The Court is not convinced that the cases cited by Defendant can be extended to confer absolute immunity on Defendant's counsel in this case. In *Fry*, the plaintiff, Phillip Fry, was a tax accountant who pleaded guilty to one count of conspiracy to defraud the government, and who later challenged notices of tax deficiency before the Tax Court. After the Tax Court proceedings ended adversely to Fry, he filed a *Bivens* action against thirteen federal defendants (and two non-federal defendants), claiming First, Fourth, and Fourteenth Amendment violations. 939 F.2d at 834. The complaint argued that various IRS employees, revenue agents, and attorneys retaliated against Fry for exercising his First Amendment rights. The Ninth Circuit considered whether the agency attorneys were immune from suit. The court noted that the Supreme Court has provided absolute immunity to the President, judges, prosecutors, witnesses, and officials performing "quasi-judicial" functions. *Id.* at 836.

In *Fry*, all claims against the tax attorneys stemmed from the attorneys' official conduct in representing the government in the Tax Court litigation. The *Fry* court considered its earlier decision in *Flood v. Harrington*, 532 F.2d 1248 (9th Cir. 1976), which concluded that "the differences between a state criminal prosecution and federal civil tax litigation did not undermine the reasons justifying the

---

[1] Defendant argues that for the same reasons, the *Noerr-Pennington* doctrine protects counsel's letter because Defendant was entitled to seek redress from the courts for frivolous litigation, which is precisely what the letter stated. (Mot. at 9.) "The *Noerr-Pennington* doctrine derives from the Petition Clause of the First Amendment and provides that those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 643-44 (9th Cir. 2009) (internal quotation marks omitted). Because the Court finds that absolute immunity does not apply in this case, the Court also rejects the arguments as incorporated by Defendant into the *Noerr-Pennington* section of its brief.

application of absolute immunity" to the tax lawyers. *Fry*, 939 F.2d at 836. The Ninth Circuit held in *Flood*, and ultimately reaffirmed in *Fry*, that "'the doctrine of absolute immunity protects the defendant attorneys in this case if their allegedly improper conduct was intimately associated with the judicial phases of [the] tax litigation.'" *Id.* at 836 (quoting *Flood*, 532 F.2d at 1251). In reaching this conclusion, the *Fry* court relied on the Supreme Court's decision in *Butz v. Economou*, 438 U.S. 478, 516-17 (1978), also cited by Defendant here, which extended absolute immunity to agency officials performing adjudicatory and prosecutorial functions. The *Fry* court went on to hold that absolute immunity extends to government attorneys initiating litigation, whether the government is a plaintiff or defendant, and whether the government is conducting a civil trial, criminal prosecution or an agency hearing. *Fry*, 939 F. 2d at 837.

In *Butz*, the Supreme Court recognized the importance of providing absolute immunity to various participants in the judicial process "to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Butz*, 438 U.S. at 512. The Supreme Court then extended the absolute immunity conferred in judicial proceedings to administrative hearing officers adjudicating federal agency disputes because of the similarity of the judicial role with that of a hearing officer. *Id.* at 512-13. Similarly, the privilege was also extended to those agency officials performing functions analogous to prosecutors, or in other words, those with discretion over whether to initiate agency proceedings, seek sanctions, and other similar duties. Lastly, the Supreme Court examined the role of agency attorneys in conducting trials and presenting evidence. The Court concluded that there was no substantial difference between such agency attorneys and prosecutors. Accordingly, the Court held that "an agency attorney who arranges for the presentation of evidence on the record in the course of an adjudication is absolutely immune from suits based on the introduction of such evidence." *Id.* at 517.

These cases make clear that it is the special nature of the responsibilities undertaken by the party seeking immunity that governs whether immunity applies. Whether the party must exercise judgment in a fashion similar to a judge or a prosecutor determines whether their conduct should be insulated from damages suits in order to protect the integrity and independence of that decision making process. Here, Defendant has not shown how counsel's actions fall within the limited set of circumstances described above which warrant absolute immunity for conduct intimately bound up with the litigation process. Just because counsel's client is a governmental entity, in this case a school district, immunity is not automatically conferred. Instead, the Court looks to whether counsel is akin to an agency attorney vested with the discretion to decide whether to initiate proceedings. While Defendant maintains that *Fry* applies immunity to public agency attorneys acting outside the traditional prosecutorial role, the *Fry* court's extension of immunity to the IRS attorneys in that case was based on the analogy that could be drawn from the role of a prosecutor to their role representing the agency. The attorneys' conduct of which Fry complained involved the presentation of evidence and representation of the government agency in the Tax Court litigation. The conduct was "intimately" or "closely" associated with the judicial process.

By contrast, the conduct complained of here was a threat by counsel to seek sanctions if Plaintiff appealed. Defendant does not explain how this conduct is intimately associated with the judicial process. Plaintiff is not challenging Defendant's decision to seek a Due Process Hearing before the OAH, nor any of Defendant's actions in presenting its claim to the OAH. Instead, Plaintiff is challenging a threat made by Defendant outside the context of the administrative proceedings regarding whether Plaintiff would proceed with an appeal. In these circumstances, the Court is not convinced that absolute immunity should apply. However, whether Plaintiff's claims are adequate is an entirely separate question the Court addresses claim-by-claim below

### B.   ADA Intimidation

Plaintiff's first claim alleges a violation of 42 U.S.C. § 12203(b), the subsection of the ADA prohibiting intimidation. This provision makes it unlawful "to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter." Plaintiff alleges that Defendant intimidated her as a result of Plaintiff's decision to make a charge or participate in legal proceedings. Specifically, Plaintiff alleges that Defendant's counsel threatened her in an attempt to intimidate her from exercising her legal right to appeal the OAH decision. (Compl. ¶ 22.)

Defendant argues that the challenged threat pertains to a right Plaintiff has under the IDEA,[2] i.e., the right to appeal an OAH decision, not to any rights protected under the ADA. (Mot. at 11.) Thus, Defendant contends that this claim fails because Plaintiff does not allege a violation of any right protected under the ADA. Plaintiff responds that 28 C.F.R. § 35.134, part of the ADA's implementing regulations, prohibits intimidation or threats on account of an individual participating in a proceeding or hearing. (Opp'n at 10.)

Plaintiff's complaint makes clear that she believes Defendant's threat was calculated to intimidate her from appealing the adverse OAH decision. Defendant is correct that the IDEA, not the ADA, gives Plaintiff the right to such an appeal. *See* 20 U.S.C. § 1415(i)(2). The implementing regulations cited by Plaintiff do not save this claim because they pertain to retaliation or coercion in response to an individual's opposition to practices made unlawful under the ADA, or because an individual participated in any proceedings brought under the ADA. *See* 28 C.F.R. § 35.134(a) ("No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful *by this part*, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under *the Act or this part*.) (emphasis added). Although Plaintiff's opposition proposes a curative amendment with respect to pleading the objective effect of the alleged adverse action, this amendment would do nothing to change the fact that the claim does not allege an ADA violation. Plaintiff's participation falls under the

---

[2] 20 U.S.C. § 1415(i)(3)(a).

IDEA's right to appeal, and Plaintiff fails to explain how this implicates the ADA.

Accordingly, because it appears that amendment would be futile, the Court dismisses this claim with prejudice.

### C. Section 1983

Defendant argues that, as an arm of the state, it is not subject to suit under section 1983. (Mot. at 12.) Plaintiff responds that a school district may indeed be sued for civil rights violations under section 1983, citing *Kelly v. Richland School Dist. 2*, 463 F. Supp. 216, 221-22 (D.S.C. 1978.)

In *Kelly*, the school district defendant moved to dismiss a § 1983 claim, arguing that it was not a "person" under the statute. *Id.* at 221. The *Kelly* court, citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978), concluded that local government officials sued in their official capacities are "individuals" under § 1983. *Id.* The *Kelly* decision, arising out of the District of South Carolina, is not controlling authority. Moreover, an examination of the *Kelly* court's citation to *Monell* reveals that *Monell* does not hold broadly that local government entities may be sued under § 1983 under all circumstances. Instead, the *Monell* Court explained that "our holding today that local governments can be sued under § 1983 necessarily decides that local government officials sued in their official capacities are 'persons' under § 1983 in those cases in which, as here, a local government would be suable in its own name." *Monell*, 436 U.S. at 690 n.55. The Court expressly noted that its holding applied "at least where Eleventh Amendment considerations do not control[.]" *Id.*

In analyzing whether the local government may be sued in its own name under section 1983, and more importantly, whether such a suit is precluded by the Eleventh Amendment, the Court looks to controlling Ninth Circuit authority on this issue. In *Belanger v. Madera Unified School Dist.*, 963 F.2d 248 (9th Cir. 1992), the Ninth Circuit considered whether a § 1983 claim for damages against a school district was prohibited under the Eleventh Amendment. The Eleventh Amendment to the U.S. Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." In *Belanger*, the plaintiff acknowledged that if the defendant school district was a state agency for purposes of the Eleventh Amendment, her claim for damages under § 1983 would be barred. After applying the five factor balancing test set forth in *Mitchell v. Los Angeles Cmty. College Dist.*, 861 F.2d 198, 201 (9th Cir. 1988), the court concluded that the school district was an agent of the state that performs state governmental functions and that a judgment would be satisfied out of state funds. Thus, the court concluded that the state's sovereign immunity under the Eleventh Amendment barred the plaintiff's § 1983 claim for damages.

Defendant cited *Belanger* in its moving papers and Plaintiff has failed to respond meaningfully to explain why *Belanger* does not control. Because the Ninth Circuit was clear, that a school district in California may not be sued under section 1983, as an arm of the state under the

Eleventh Amendment, the Court finds that Plaintiff may not maintain a § 1983 claim for *damages*. However, Plaintiff's second cause of action seeks both monetary and *injunctive* relief. The Supreme Court has explained that the Eleventh Amendment does not bar injunctive relief against the states for violations of federal law. *See Quern v. Jordan*, 440 U.S. 332, 337 (1979) ("under the landmark decision in *Ex parte Young*, 209 U.S. 123 (1908), a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury.").

Accordingly, Plaintiff's second claim is dismissed with prejudice, except to the extent Plaintiff seeks injunctive relief.

### D. Section 504

Plaintiff's third claim alleges violation of § 504 of the Rehabilitation Act of 1973. Plaintiff alleges that Defendant's threats and coercion interfered with her rights under IDEA and § 504. (Compl. ¶ 35.) Defendant argues that this claim fails to allege what right under § 504 Defendant allegedly violated. (Mot. at 13.) Plaintiff responds that Defendant's motion as to this claim is vague, and that § 504 incorporates the remedies set forth in Title VI of the Civil Rights Act of 1964. (Opp'n at 11.)

Section 504 "forbids organizations that receive federal funding, including public schools, from discriminating against people with disabilities." *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010) (citing 29 U.S.C. § 794(b)(2)(B)). Section 504 provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). A school district is liable for damages under § 504 if it fails to provide reasonable accommodation necessary for enjoying meaningful access to the benefits of a public education, and does so with deliberate indifference. *Mark H.*, 620 F.3d at 1097.

Plaintiff's § 504 claim does not meet the pleadings standards set forth above in *Twombly* and *Iqbal*. Plaintiff's claim mentions violation of § 504 in passing, but Plaintiff does not explain *what* that violation is. The balance of Plaintiff's § 504 claim is made up of legal conclusions, which the Court disregards for the purposes of a motion to dismiss under Rule 12(b)(6). *Iqbal*, 129 S. Ct. at 1950. Accordingly, this claim is dismissed.

Because Plaintiff has alleged that Defendant receives federal funds, and because the Court is not convinced that amendment of this claim would be futile, the Court grants Plaintiff leave to amend her § 504 claim to explain how § 504 was violated and provide factual allegations in support of her contentions.

### E.     Motion to Strike

Defendant moves to strike paragraphs 23(b), 30(a), and 39(b) from Plaintiff's prayers for relief, arguing that they do not adequately allege a basis for the relief sough. (Mot. at 13.) Plaintiff argues that the motion to strike should be denied for failure to comply with Local Rule 7-3.

The Court finds that Defendant substantially complied with Local Rule 7-3 by conferring with Plaintiff regarding its belief that certain remedies are inappropriate. (Reply at 15.) Thus, the Court considers the merits of the motion to strike.

Under Rule 12(f), a party may move to strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). The grounds for a motion to strike must appear on the face of the pleading under attack, or from matters which the Court may take judicial notice. *SEC v. Sands*, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995). The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993); *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

Here, Defendant moves to strike three forms of relief requested by Plaintiff. Within Plaintiff's first cause of action, Defendant moves to strike Plaintiff's request for equitable relief. This request is DENIED AS MOOT because the first cause of action is dismissed with prejudice.

Within Plaintiff's second cause of action, Defendant moves to strike Plaintiff's request for compensatory damages. For the reasons explained above, Plaintiff may not allege a § 1983 claim for damages, only for injunctive relief. Accordingly, paragraph 30(a) on page 7 of Plaintiff's complaint is hereby STRICKEN.

Within Plaintiff's third cause of action, Defendant moves to strike Plaintiff's request for compensatory damages. The Court DENIES the motion to strike as to this form of requested relief because Plaintiff has been granted leave to amend this claim. Where a party moves to strike a prayer for damages on the basis that the damages sought are precluded as a matter of law, the request is more appropriately examined as a motion to dismiss. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974-75 (9th Cir. 2010) ("We therefore hold that Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law.").

### VI.     DISPOSITION

For the reasons set forth above, the Court hereby GRANTS IN PART and DENIES IN PART Defendant's Motion to Dismiss and Motion to Strike (Dkt. 5). Plaintiff's first, second, and third causes of action are DISMISSED, except to the extent Plaintiff seeks injunctive relief under the second cause of action for violation of § 1983. Plaintiff is granted leave to amend the third cause of action

only.  Failure to amend by January 10, 2012 will result in dismissal of this claim with prejudice.

The Clerk shall serve this minute order on all parties to the action.