O

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| C.W., a minor child by and through her mother,<br><br>          Plaintiffs,<br><br>     vs.<br><br>CAPISTRANO UNIFIED SCHOOL DISTRICT,<br><br>          Defendant. | Case No.: SACV 11-1157 DOC(RNBx)<br><br><br>**ORDER AFFIRMING ADMINISTRATIVE LAW JUDGE'S DECISION** |

Before the Court is a document titled "Motion for Summary Judgment," which is an appeal of a decision by the Office of Administrative Hearings in an action under the Individuals with Disabilities Education Act ("IDEA").[1] (Dkt. 19). After reviewing the moving papers and oral argument, the court AFFIRMS the decision by the Office of Administrative Hearings.

---

[1] Regardless of what the "parties may call" the document, it "is in substance an appeal from an administrative determination." *Capistrano Unified Sch. Dist. v. Wartenberg By & Through Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995).

**I.     Background**

This appeal is brought on behalf of student C.W. ("Student") by her mother K.S. ("Mother") against Capistrano Unified School District ("District"). As discussed in this opinion, infra, the Court finds that the ALJ's decision is thorough and careful and thus adopts the ALJ's findings of fact in their entirety. The Court summarizes those findings here very briefly to provide context for this appeal.

### a. June 14, 2010, through October 28, 2010: beginning of triennial assessment, creation of Prior Report, and IEP Team meeting regarding Prior Report

No one disputes that Student has "long been eligible for special education" based on her disability, which is classified as "Other Health Impairment." ALJ Decision, Bates no. 165, 175. Precisely because Student is eligible for special education, District conducted a "triennial assessment" of Student. *Id.* at 165.

Part of this assessment began on June 14, 2010, and continued through October 21, 2010. *Id.* This part of the triennial assessment was recorded in an October 22, 2010, report ("Prior Report"). *Id.* This Prior Report was discussed at an Individualized Education Program ("IEP")[2] Team meeting on October 28, 2010. *Id.* at 165; Bates no. 190-237.

Student's appeal does not challenge the sufficiency of this Prior Report.

### b. September 22, 2010, through January 5, 2011: triennial assessment continued and creation of Disputed Report

On September 22, 2010, District requested Mother's consent to conduct an additional part of the triennial assessment to determine Student's visual and motor skills. *Id.* at 165. This part

---

[2] An Individualized Education Program ("IEP") is a "written statement that sets forth the child's present performance level, goals and objectives, specific services that will enable the child to meet these goals, and evaluation criteria and procedures to determine whether the child has met these goals." 99 Am. Jur. Proof of Facts 3d 237.

of the triennial assessment was conducted from December 3, 2010, through January 5, 2011 and was recorded in another report ("Disputed Report").  *See* Disputed Report, Bates no. 242.

The "purpose" of this Disputed Report was to "evaluate [Student's] present levels and to assist the IEP team in developing an IEP."  *See* ALJ Decision, Bates no. 175.  The purpose of the Disputed Report was not to "determine [Student's] eligibility" for special education services. *Id.*

The Disputed Report does not contain the phrase "[Student] may need special education and related services."  The Disputed Report instead states on its first page that a prior "IEP lists [Student's] educational diagnosis as OHI – Other Health Impairment."  *See* Disputed Report, Bates no. 242.  The Disputed Report also identifies five "Unique Needs" of Student and fourteen "accommodations . . . to assist [Student] in the classroom."  *Id.* at 250.  The Disputed Report concluded with the assessor's statement that "[i]t was a privilege to evaluate [Student]."  *Id.* at 251.

### c. January 12, 2011: Mother tells District that the Disputed Report is stupid

At the January 12, 2011, meeting to discuss the Disputed Report, Mother informed the IEP Team that the Disputed Report was "stupid."  ALJ Decision, Bates no. 172-73, ¶ 39-40. Mother did not provide additional insight into the basis for her belief that the Disputed Report was stupid.  Transcript, Bates no. 498-99.

### d. January 25, 2011: Mother and representative "disagree" with the Disputed Report

On January 25, 2011, Mother's representative sent a letter stating that, "[o]n behalf of [Mother], we hereby disagree with the" Disputed Report.  *See* January 25, 2011, Letter, Bates no. 319-320.  The letter does not provide additional insight into the basis for the disagreement.

The letter "request[ed] an independent educational evaluation for occupational therapy" for Student.  *Id.*

### e. March 7, 2011: District requests due process hearing to defend Disputed Report

After reevaluating the Disputed Report, District concluded that it was sufficient and thus requested a due process hearing to avoid the additional expense of an independent educational evaluation. The District filed its complaint on Mach 7, 2011, which is 41 days after it had received Mother's letter. *See* ALJ Decision, Bates no. 173.

### f.  August 2, 2011: Mother appeals ruling from due process hearing

Mother commenced the present action on August 2, 2011, on behalf of Student. *See* Compl. (Dkt. 1). The action demands that District: (1) provide three years of occupational therapy to Student; (2) provide three years of occupational therapy consultation; (3) fund an independent educational evaluation of Student for occupational therapy; and (4) fund Student's attorney's fees and costs. *Id.*

## II.  Legal Standard

### a.  Standard of Review where the ALJ's decision is thorough and careful

Where, as here, a party challenges the outcome of a due process hearing under the Individuals with Disabilities Education Act ("IDEA"), the reviewing court receives the administrative record, hears any additional evidence, and, "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B); 3 Americans with Disab.: Pract. & Compliance Manual § 11:267.

The standard of review of an administrative decision is a modified *de novo* standard, based primarily on a review of the stipulated administrative record. *Seattle Sch. Dist. No. 1 v. B.S.*, 82 F.3d 1493, 1499 (9th Cir. 1996); *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471-1473 (9th Cir. 1993). Complete *de novo* review is inappropriate. *J.G. v. Douglas County Sch. Dist.*, 552 F.3d 786, 793 (9th Cir. 2008); *E.W. v. Rocklin Unified Sch. Dist.*, 2006 U.S. Dist. LEXIS 71151, *15 (E.D. Cal. 2006) ("Because the deference potentially accorded the administrative proceedings, complete de novo review is inappropriate.").

In reviewing the decision, the court must give "due weight" to the underlying administrative proceedings, which means that the court should not try the case anew. *Henry Hudson Cent. Sch. Bd. of Educ. v. Rowley* ("*Rowley*"), 458 U.S. 176, 206 (1982) (finding that courts should not "substitute their own notions of sound educational policy for those of the

school authorities which they review"); *Capistrano Unified Sch. Dist. v. Wartenberg,* 59 F.3d 884, 891-892 (9th Cir. 1995).

Where an administrative law judge's report is "careful and thorough," the reviewing court may exercise "discretion to give [the report] quite substantial deference." *Capistrano*, 59 F.3d at 892; *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994). A decision is thorough and careful when the hearing officer "participates in the questioning of witnesses and writes a decision 'contain[ing] a complete factual background as well as a discrete analysis supporting the ultimate conclusions.'" *R.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 942 (9th Cir. 2007) (citing *Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1031 (9th Cir. 2006). A carefully-articulated administrative-level opinion meets the "thorough and careful" standard. *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 908 (9th Cir. 2009). Exactly how much weight is "due" to an administrative law judge's findings is a matter of discretion of the courts. *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987); *see also Capistrano*, 59 3d. at 891.

### b. The ALJ's decision here was thorough and careful

The Court concludes that the decision by the administrative law judge (ALJ) who presided over the due process hearing in this case should be reviewed with substantial deference because his findings are thorough and careful.

First, the ALJ's 14-page decision includes a thorough factual background summarizing the evidence presented at the due process hearing. The ALJ issued 41 detailed factual findings related to the issues presented at the due process hearing. Indeed, Student does not object to any factual errors in the ALJ's decision; Student's sole basis for appeal is two purported legal errors.

Second, the ALJ carefully considered the testimony of the three witnesses who testified and thoroughly researched the relevant law. The ALJ also accurately summarized the governing law. *See e.g.*, ALJ Decision, Bates 173-75.

In sum, the Court concludes that the ALJ's decision contains no factual errors and was thorough and careful. Because the ALJ's decision is thorough and careful, the Court reviews the

ALJ's decision with substantial deference. *See Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994).

### III. Discussion

Student argues that the ALJ erred by holding that: (1) the Disputed Report's failure to use the words "[Student] may need special education and related services" was not a procedural violation; or (2) the District's filing of a request for a due process hearing was timely where it was done 41 days after receipt of Mother's letter stating she disagreed with Disputed Report.

#### a. The Disputed Report did not violate the IDEA

"[P]rocedural flaws in an IEP's formulation do not automatically violate the IDEA." *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 821 (9th Cir. 2007). Rather, a student establishes an IDEA violation if she shows *both*: (1) the school did not comply with the required procedures; *and* (2) the resulting "IEP is not 'reasonably calculated to enable the child to receive educational benefits.'" *Id.* (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 206-07 (1982)). The Ninth Circuit has also described this second prong as requiring "a *material* failure to implement an IEP." *Id.* at 822.

Student contends that the Disputed Report contains a procedural violation because the Disputed Report did not state that Student "may need" special education services and did not state a "basis" for such a determination. Mot. at 4.[3] Conspicuously absent from Student's

---

[3] To the extent Student argues that the Disputed Report was insufficient because it failed to recommend 60 minutes of occupation therapy for Student, District is correct that such a recommendation is not required by Section 56327(a). *See Pajaro Valley Unified Sch. Dist. v. J.S.*, C 06-0380 PVT, 2006 WL 3734289, *4 n. 4 (N.D. Cal. Dec. 15, 2006) ("[S]ection 56327(a) requires only that an Report state whether the pupil 'may need' special education, not whether the pupil is actually eligible for special education under the IDEA."). Section 56327(a) does not require assessment reports to recommend services or determine a student's eligibility for services because the IEP teams, not assessors, determine services appropriate to support the unique needs of a student eligible for special education. *See* 34 C.F.R. § 300.324(b)(2)(B).

argument is any indication how this alleged procedural violation resulted in an IEP that was not reasonably calculated to enable her to receive educational benefits.

### i. Student has not shown a procedural violation

The relevant procedural requirement—California Education Code Section 56327—requires the creation of a "written report, or reports, . . . of the results of each assessment" and provides eight types of information that the "report shall include," such as "[w]hether the pupil may need special education and related services" and the "basis for making the determination." Cal. Educ. Code § 56327(a-b).

The Disputed Report sufficiently stated that Student *may* need special education services based on a disability because the Disputed Report stated that Student actually *was diagnosed* by a prior IEP Team as having a disability rendering her eligible for special education services, namely, "Other Health Impairment."[4]  *See* Disputed Report, Bates no. 242 (first page stating that a prior "IEP lists her educational diagnosis as OHI – Other Health Impairment."). Obviously, the "basis for making the determination" that Student may need special education services is this prior diagnosis. *See* Cal. Educ. Code § 56327(a-b).

The purpose of the Section 56327(a) and (b) requirements is to ensure that the assessment report contains information from which the IEP Team can determine if the child has a disability that makes her eligible for special education. The Disputed Report more than adequately fulfills this purpose because it states that a prior IEP Team has *already diagnosed* Student as having a disability that makes her eligible for special education. This appeal is especially frivolous given that no one disputes that Student is eligible for special education services. District did not dispute Student's eligibility at the time the Disputed Report was written nor at any time

---

[4] *See* Disputed Report, Bates no. 242. A child may be eligible for special education services due to her "[o]ther health impairment" if she has "limited strength, vitality, or alertness . . . that results in limited alertness with respect to the educational environment, that . . . (i) Is due to chronic or acute health problems such as asthma, [or several other listed conditions] . . . ; and (ii) Adversely affects a child's educational performance." 34 C.F.R. §300.8 (c)(9).

throughout this lengthy litigation. *See* ALJ Decision, Bates no. 175 ("Student had long been eligible for special education.").

Student's argument appears to hinge on the lack of the exact words "[Student] may need special education and related services" in the Disputed Report. However, Student cites no authority finding a procedural violation of Section 56327 where these exact words are not used. The Court sees no reason to treat this specific statutory phrase as a mystical incantation that all school districts must utter to protect themselves from liability.

Accordingly, the Court concludes that the Disputed Report was not a procedural violation.

### ii. Student has not shown that the resulting IEP was not reasonably calculated to enable the child to receive educational benefits

Alternatively, even if the Dispute Report's failure to repeat a statutory phrase was a procedural violation, Student has failed to show the second prong of a claim under the IDEA, namely, that the IEP was not reasonably calculated to enable the child to receive educational benefits. An ALJ "may find" this second prong is satisfied "only if" the alleged "procedural inadequacies" either: (1) "impeded the child's right to a free appropriate public education"; (2) "significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child"; or (3) "caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii).

Student does not even mention the law regarding this second prong of an IDEA claim based on procedural violations, nor make any argument. Instead, Student appears to believe that a procedural violation, without anything more, entitles her to three years of occupational therapy, three years of occupational therapy consultation, funding for an independent educational evaluation, and attorney's fees and costs.[5]

---

[5] At oral argument, Student asserted that the second prong was satisfied because the IEP failed to recommend 60 minutes of occupation therapy for Student. However, Student has never cited any authority on this issue nor explained how this omission from the IEP is related to the

-8-

Student's interpretation of the IDEA would impose on educators a labyrinthine set of procedures by which parents and their legal representatives can trap school districts into funding expensive private testing and therapy.  Such a "rule would exalt form over substance," creating a financial windfall to parents and unfairly punishing schools that actually accomplish the goals of the IDEA by providing a free appropriate public education to children with disabilities.  *See Doyle v. Arlington Co. Sch. Bd.,* 806 F.Supp. 1253, 1260 (E.D.Va. 1992).

Indeed, District's efforts to accommodate Student in this case perfectly illustrate why the both the Supreme Court and Ninth Circuit hold that "procedural flaws in an IEP's formulation do not automatically violate the IDEA."  *See Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 821-22 (9th Cir. 2007) (interpreting the same statute at issue here, 20 U.S.C. § 1415(f)(3)(E)(ii)); *Rowley*, 458 U.S. 176, 207 (1982).  As the ALJ observed, no one disputes that "Student had long been eligible for special education."  *See* ALJ Decision, Bates no. 175.  Indeed, the Disputed Report reflects the District's lengthy efforts to *accommodate* Student's disability.  The Disputed Report is part of a "triennial assessment" of Student and its "purpose" was to "evaluate [Student's] present levels and to assist the IEP team in developing an IEP"; the Disputed Report was not intended to "determine [Student's] eligibility" for special education services because no one disputed Student's eligibility.  *Id.*  The Disputed Report reflects District's sincere commitment to assessing Student's needs for special education, shown by the identification of Student's five "Unique Needs" and fourteen "accommodations . . . to assist [Student] in the classroom."  Disputed Report, Bates no. 250.  The Disputed Report also reflects

---

Disputed Report's failure to repeat the phrase "[Student] may need special education and related services," which is the only procedural violation under Section 56327(a) that Student alleges.  Student can not win an IDEA claim simply by proving the existence of a procedural inadequacy and an *unrelated* harm.  *See* 20 U.S.C. § 1415(f)(3)(E)(ii) (explaining the "procedural inadequacies" must have either "impeded" the child's right to a free appropriate public education, "significantly impeded" the parents' opportunity to participate in the decisionmaking process, or "caused" a deprivation of educational benefits).

a profound respect for Student in particular and students with disabilities in general, shown by the assessor's conclusion that "[i]t was a privilege to evaluate [Student]." *Id.* at 251.

### iii. Conclusion

In sum, because Student has shown neither a procedural violation nor that the violation was material, the ALJ's decision is AFFIRMED as to this issue.

### b. The 41 days between Student's vague notice of disagreement and District's request for a due process hearing is not unnecessary delay

Where, as here, Mother "requests an independent educational evaluation at public expense" and District requested a due process hearing to avoid this expense, District's request was required to be made "without unnecessary delay." 34 C.F.R. § 300.502(b)(2); *see also* Educ. Code, § 56329(c). While the statutes do not define "unnecessary delay," no California case at the administrative or appellate levels has held that 41 days or less constitutes an unnecessary delay. To the contrary, the briefest period of time actually determined to be an "unnecessary delay" in a California case at any level appears to be 74 days. *See, e.g., Student v. Los Angeles Unified School Dist.*, 48 IDELR 293 (2007), OAR No. N2006120420, *consolidated with Los Angeles Unified School Dist.*, OAH No. N2007050027.

Student argues that the ALJ erred in holding that District acted without unnecessary delay because "no binding precedent" exists regarding a 41-day delay and the ALJ relied on a case that was not absolutely factually-analogous, *J.P. ex rel., E.P. v. Ripon Unified Sch. Dist.*, 207CV02084MCEDAD, 2009 WL 1034993 (E.D. Cal. Apr. 15, 2009). In that case, the court held that the district acted without unnecessary delay despite filing its due process complaint "more than two months" after a parent's request for an independent educational evaluation. *J.P. ex rel., E.P. v. Ripon Unified Sch. Dist.*, 207CV02084MCEDAD, 2009 WL 1034993, *7-8 (E.D. Cal. Apr. 15, 2009). The court reasoned that the delay was not unnecessary because the district and parent continued to negotiate after the parent filed her request and the parties "did not come to a final impasse [until] less than three weeks before the [d]istrict's due process report was filed." *Id.* at *7.

Student's argument is, frankly, frivolous. First, Student cites absolutely no authority showing that 41 days is unnecessary delay, and this Court has found none. Second, Student cites no authority for the novel proposition that an ALJ errs as a matter of law by reaching a holding where no "binding precedent" yet exists. Such an absurd rule would turn the concept of precedent on its head. Precedent accumulates *by* courts ruling on issues that were never previously adjudicated; precedent could not exist if courts *abstained* from ruling on issues that had not been previously adjudicated.

Finally, the Court notes that, if there was any delay, it was necessitated by Mother's vague letter stating she "disagree[d]" with the Disputed Report but failing to identify *any* basis for the disagreement. *See* January 25, 2011, Letter, Bates no. 319-320 ("On behalf of [Mother], we hereby disagree with the occupational therapy report presented at the IEP team meeting on January 12, 2011."). As District notes, without any specific objection, District was required to reevaluate the *entire* Disputed Report. Such detailed review obviously takes time and money. Mother could have reduced this time and money by identifying her specific objections to the Disputed Report. Her failure to do so reflects poorly on her, not on District.

Accordingly, the ALJ's decision is AFFIRMED as to this issue.

### c. Attorney's fees

Given that Student has failed on appeal, her request for attorney's fees is DENIED. However, the Court is willing to entertain a future motion for attorney's fees from District.

The Court does not relish writing opinions denying appeals by disabled students. However, such opinions are necessary when the bases for appeal are frivolous. This is not a case where a school refused to provide special education services to a disabled student based on hyper-technicalities or vague statements in its assessment report of the student. Rather, this is a case where the school *agreed* that the student was eligible for special education services, *agreed* to conduct an additional assessment of the student, and then *thoroughly reevaluated* the report of that assessment when the parent informed the school that she thought the report was "stupid" and that she "disagree[d]" with it. *See* ALJ Decision Bates No. 172-73, ¶ 39-40.

America's public schools, unlike for-profit and religious schools, are institutions devoted to the noble principle that children with disabilities should receive a "free appropriate public education."[6] But while such education is "free" in the sense that disabled children do not pay for it directly, the money must come from somewhere, namely, school districts' budgets. Because school districts' budgets are not infinite, the IDEA's appeals process and remedies are designed to ensure that children with disabilities are accommodated, not to drain public schools of the funding necessary for such accommodation. The frivolous arguments advanced by Mother in this case have forced District to incur expenses in this litigation that could have funded the special education of students with disabilities, *including Mother's own child*. If District wishes to recover these expenses so as to provide services to Student and other children like her, District is free to file a motion to do so.

///

///

///

---

[6] 20 U.S.C. § 1400 (d)(1)(A) ("The purposes of [the IDEA] are . . .to ensure that all children with disabilities have available to them a free appropriate public education . . . ."). For-profit and religious schools do not have to comply with the IDEA because the IDEA requires compliance only from those institutions "that receive[] assistance" in the form of IDEA funds from the federal government. 20 U.S.C. § 1415(a); 2 Federal Civil Rights Acts (3d ed.) § 12:67 ("The Individuals with Disabilities Education Act provides federal money to assist state and local agencies in educating handicapped children, and conditions this funding upon compliance with extensive goals and procedures.").

## IV. Disposition

For the foregoing reasons, the Court AFFIRMS the ALJ's decision. If District, as prevailing party, wishes to move for reimbursement for reasonable attorney's fees, it should file:

(1) a Proposed Final Judgment by August 9, 2012; and

(2) a Motion for Reasonable Attorneys fees by August 13, 2012, with a hearing date of September 10, 2012, prominently displayed on the first page.

DATED:

August 3, 2012

_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE